BYRNES, Judge.
Joseph Johnson appeals his jury conviction for first degree murder for which he received a sentence of life imprisonment without benefit of parole, probation or suspension of sentence. We affirm.
On July 26, 1987 Udel Dufour found the nude body of Andromeda Kirkland leaning against a building at 8510 General Meyer Street near Flanders Street in Algiers. The investigating officers followed a blood trail from the body to the window of the defendant’s apartment at 1356 Flanders Street in Algiers. Police found bloody clothing and bedding materials next to the victim and in a dumpster behind the building. When the officers entered the opened apartment door, they found large quantities of blood on the walls and windows in the living room and the wall above the tub in the bathroom. They recovered blood soaked clothing from the bathroom. Finding the defendant sleeping nude in the bedroom, the detectives told the defendant that a murder had taken place in the apartment. Joseph Johnson stated he knew nothing about it. Upon reading him his Miranda rights and placing the defendant under arrest, Joseph Johnson made a statement at police headquarters that he had taken a taxi across the river the night before. According to his statement, at the Discount Grocery and Gas Store on General Meyer about 8:00 a.m. that morning, the defendant saw a man named “Chewee” who said he cut up a woman last night but did not say anything about the defendant’s apartment. Joseph Johnson related that he and a woman named Linda then walked to his apartment, got into bed and made love. When she left, the defendant went to sleep until the police woke him.
On appeal defendant claims that the State failed to prove that the defendant was guilty beyond a reasonable doubt and the trial court erred in denying a new trial based on the State’s failure to disclose exculpatory information contained in the co-defendant’s rap sheet.
*419 To prove first degree murder the State must show beyond a reasonable doubt that the defendant had the specific intent to kill the victim and that the defendant killed the victim during the commission of a felony, i.e., aggravated rape in this case. State v. Copeland, 530 So.2d 526 (La.1988).
The Louisiana Supreme Court set forth the standard of review for sufficient evidence in State v. Rosiere, 488 So.2d 965, 968 (La.1986) as follows:
It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Richardson, 425 So.2d 1228 (La.1983).
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, requires that a conviction be based on proof sufficient for any trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Utimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, 483 So.2d 953 (La.1986); State v. Porretto, 468 So.2d 1142 (La.1985). State v. Wright, 445 So.2d 1198 (La.1984).
The defendant argues that the lack of efforts to conceal his apartment as the murder scene indicate a lack of guilty knowledge on his part. He further contends that even though the murder was particularly aggressive and brutal, Joseph Johnson had only a small scratch on his nose. He points out that the testing of the semen and the blood under Ms. Kirkland’s fingernails did not establish the blood type of her killer. Defendant also argues that the failure to determine a blood type from the semen possibly resulted from the perpetrator’s not being a secretor. Because the State did not prove he was or was not a secretor, the State failed to prove he committed the murder. Additionally, defendant points to the lack of a history of conflict between him and Ms. Kirkland and that on the night of the murder, no one saw him with “Bo Skinny,” the other person charged with the murder. Defendant claims that there was no evidence that identifies Joseph Johnson as the murderer or principal to the rape or murder of Ardromeda Kirkland.
Dr. Paul McGarry, forensic pathologist, testified that Ms. Kirkland died between 10:00 p.m. on July 25 and 6:00 a.m. on July 26, 1987 of numerous stab and puncture wounds. He stated that she had been manually strangled and that all her injuries were so close in time that he could not determine their sequence. The autopsy revealed that Ms. Kirkland’s vagina and rectum had been forcefully penetrated by a penis and that this occurred while she was still alive. However, no semen was found. Her blood type was determined to be Group A.
Criminalist Daniel Waguespack tested the blood found around the victim, on her clothes, in the trail of blood, on the items found in the dumpster, on the living room window sill and wall, on the kitchen wall and on the washcloth found in the bathroom. All test results showed that the blood was characterized as Group A. Wag-uespack did not test the blood on the blue jeans and pants found in the bathroom or the blood on the bathroom wall. He could not find sufficient blood to test on the knife *420 and ice pick, both of which had been recovered from water in the kitchen sink.
Cleveland “Chewee” Hart testified that he saw the defendant around 10:00 p.m. on July 25, 1987 on the corner of Horace and DeArmas Streets. While they were talking, Ms. Kirkland and Alphonse Cannon joined them, talked for about ten minutes, and left while the defendant went to a nearby house. After the defendant rejoined Hart, they walked to a pool hall five blocks away. Hart reserved a pool table and went back outside where he saw the defendant. Returning inside, Hart did not see the defendant again. Hart denied seeing Joseph Johnson the next morning and telling him that Hart cut up a woman.
Defendant presented two stipulations at trial. It was stipulated that fourteen-year-old Arkesha Smith would testify that Arnold Manuel a/k/a Jerry Wilson a/k/a “Bo Skinny” raped her on October 3, 1988 in the same location where Ms. Kirkland’s body was found. Bo Skinny told Ms. Smith that he raped other women and that he killed the last woman he raped. It was also stipulated that twelve-year-old Zabulo-nia Kirkland, daughter of the victim, would testify that on the evening before her mother’s body was found, “Bo Skinny” approached her and her older sister Orienda. When he patted Orienda on the rear, she protested, saying she would tell her mother. “Bo Skinny” told her to “go ahead, she can’t do anything, I will kill that bitch.”
Jerry Sylve, dispatcher for Algiers Cab Company, testified that his company had no record of a cab being dispatched on July 25 or 26, 1987 going over the river from Flanders. One fare about two blocks away at 7:27 p.m. on July 26th was a known female customer.
Defendant contends that because there was no proof that he actually inflicted the fatal wounds, the State failed to prove specific intent beyond a reasonable doubt.
In State v. Fuller, 414 So.2d 306, 310 (La.1982); the Louisiana Supreme Court declared:
Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction.
Under LSA-R.S. 14:24:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Considering defendant’s statement, it is impossible to conclude that when he returned to his apartment in the morning, he or Linda did not notice the blood soaked clothes or large quantities of blood in his living room, bathroom and kitchen. Defendant’s mother, Rosemary Johnson, testified that there were no light fixtures in the living room except for the light provided by the television. She stated that it was dark even during the daytime. However, the detectives testified that they could see adequately inside the living room without additional lighting.
According to Detective John Reynolds, the evidence indicated that more than one person was involved in the murder because the body was picked up, pushed through the window and dragged across the bricks, which would be difficult for one person to do.
The forensic pathologist, Dr. Paul McGarry, testified that the victim received six stab wounds and 56 ice-pick-type wounds, as well as strangulation type bruises. He determined that the tissue tears on the victim’s body could only have been produced by violent forceful intercourse with a lot of bleeding and bruising, indicating the victim was alive when she was raped. The totality of circumstances shows that the perpetrators had specific intend to commit aggravated rape and murder. Whether one co-defendant actually inflicted the fatal wounds or raped the victim, the other defendant was a principal who aided and abetted in the commission of the crimes by assisting in moving the body.
Joseph Jackson claims that he lacked guilty knowledge based on the lack of effort to conceal his apartment as the *421 murder scene. To the contrary, the detectives testified that the blood was smeared, showing an attempt to clean the blood with the blood soaked clothing. The body was dragged out of the apartment, and clothing and bedding were placed in the dumpster. An unknown stranger would have little to gain in hiding the evidence in defendant’s apartment; however, the defendant, had an interest in concealing the fact that the crimes were committed at that location.
Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could find the essential elements of the crime beyond a reasonable doubt based on the overwhelming circum.stantial evidence.
Defendant argues that the trial court erred in denying his motion for new trial based on the claim that the State failed to produce the rap sheet of “Bo Skinny” which showed exculpatory evidence that the co-defendant had been arrested for trespassing at 1356 Flanders Street in September, 1982.
The prosecution must disclose evidence favorable to the defendant if material to his guilt and if suppressed the evidence would deprive him of a fair trial. La.C.Cr.P. Arts. 718 and 729.2; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Materiality is shown where there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); State v. Cole, 530 So.2d 652 (La.App. 4th Cir.1988). We cannot find that the rap sheet indicating that “Bo Skinny” had been arrested at 1356 Flanders five years before the murder is material to have created a difference in the outcome of the trial. Although the arrest sheet may implicate “Bo Skinny”, it does not exculpate the defendant. Even if failure to disclose the information were error, it was harmless error. The defendant was not deprived of a fair trial.
Accordingly, defendant’s conviction and sentence are affirmed.
AFFIRMED