598 So.2d 629 (1992)
STATE of Louisiana
v.
Raymond BENDER.
No. Cr91-728.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Rehearing Denied June 4, 1992.
*631 Richard V. Burnes, Alexandria, for defendant-appellant.
Don Burkett, Dist. Atty., Many, for plaintiff-appellee.
Before DOUCET and KNOLL, JJ., and JOSEPH E. COREIL,[*] Judge Pro Tem.
KNOLL, Judge.
The defendant, Raymond Bender, was indicted for the first-degree murder of Sabine Parish Sheriff Deputy James Kinney, a violation of LSA-R.S. 14:30. After the guilt phase of defendant's capital murder trial, defendant was found guilty of first-degree murder. When the jury was unable to unanimously agree on a sentence, the trial judge imposed a sentence of life imprisonment as required by LSA-C.Cr.P. Art. 905.8.
Defendant appealed assigning fourteen errors; five of these assignments of error have not been briefed and will not be considered since they are deemed abandoned. Uniform Rules of Courts of Appeal, Rule 2-12.4.

FACTS
The victim, James Kinney, was a deputy sheriff for the Sabine Parish Sheriff's Department. On Monday, February 20, 1989, Deputy Kinney along with officers of the Many Police Department were on the lookout for Raymond Bender. An arrest warrant for aggravated kidnapping had been issued for him earlier that day.
At approximately 2:28 p.m., Deputy Kinney radioed to the dispatcher inquiring if there was an outstanding warrant for the arrest of Raymond Bender. Officer Wayman Ferguson of the Many Police Department interrupted the radio transmission and informed Deputy Kinney that an arrest warrant for defendant was outstanding. Deputy Kinney then told Officer Ferguson that his vehicle was behind Raymond Bender, and asked him to meet them around the Apollo Apartments to assist in serving the warrant. When Officer Ferguson arrived at the area near the Apollo Apartments, he could not locate Deputy Kinney's patrol car.
Nearby, Officer Ferguson saw Deputy Kinney's patrol car parked on the shoulder of Middle Creek Road, a dirt road, with its red lights flashing and motor running. When Officer Ferguson arrived at the scene, Mr. U.Z. Joseph, who had arrived moments before, told Officer Ferguson, "I believe he's dead." Officer Ferguson confirmed that Deputy Kinney was dead and then called for an ambulance at 2:32 p.m. According to the radio log of the dispatcher for the Sabine Parish Sheriff's Department, four minutes elapsed between the time Deputy Kinney informed the office he was behind defendant and going to meet a city policeman at the Apollo Apartments, and the time Officer Ferguson requested an ambulance.
Officer Ferguson testified that when he got to the scene it appeared that Deputy Kinney had been shot once in the chest, and a shotgun blast had been fired at the windshield of the deputy's patrol car. One spent shotgun shell lay in the middle of the road near the front of the patrol car.
After other policemen arrived at the scene of the shooting, it was learned that a Datsun 280Z automobile was abandoned in a ditch farther down Middle Creek Road. As Officer Ferguson, Chief Dean Lambert, and Trooper Joe Melton were preparing to *632 go to the location of the Datsun 280Z, the radio dispatcher informed them that defendant was at the home of Levy and Lurline Bonds, Officer Ferguson's in-laws. When Raymond Bender walked up to the house, Mrs. Bonds had been told by defendant that he shot Deputy Kinney, and he asked her to call the police and his mother.
When the police arrived at the Bonds' home, defendant was sitting on the porch swing between Mr. and Mrs. Bonds. He asked, "How is Jimmy [Deputy Kinney] doing?" Defendant was placed under arrest, searched and transported to the Sabine Parish Sheriff's Office. During the search of defendant, the police removed red and green shotgun shells from defendant's pockets. They also retrieved from the front porch of the Bonds' residence the shotgun which they suspected that defendant used to shoot Deputy Kinney.
Recovered from the road, near Deputy Kinney's patrol car, was a spent, red, 12 gauge shotgun shell. Another spent, green, 12 gauge shotgun shell was recovered when Trooper Melton inventoried the contents of the Datsun 280Z automobile defendant abandoned in a ditch on the side of Middle Creek Road. In the middle of the road, near the abandoned Datsun automobile, the police also recovered an empty 12 gauge shotgun shell box and one live, green, shotgun shell.
It was later learned that shortly before the shooting, Mr. Robert William Shirley was on Middle Creek Road looking for firewood and saw Deputy Kinney and defendant. Mr. Shirley testified that as he drove past, he saw Deputy Kinney sitting in his patrol car, talking on his radio, and defendant walking from the Deputy's car to a Datsun automobile which was parked on the shoulder of the road, 25 to 35 feet in front of the patrol car. Mr. Shirley recognized Deputy Kinney and waved to him. At trial, he also identified defendant as looking similar to the man he saw on February 20, 1989. Mr. Shirley testified that neither defendant nor Deputy Kinney acted excited, agitated, or like anything was wrong.
The defendant testified on his own behalf at trial, and raised self-defense as justification for the shooting.
The defendant claimed he went to the home of his uncle the night before the shooting and borrowed a Remington 12 gauge pump shotgun to go hunting with friends. However, the uncle had reported the shotgun stolen, and defendant admitted on cross-examination that he took the shotgun without the knowledge or consent of his uncle. On Monday morning, defendant bought a box of # 6, green, shotgun shells allegedly to hunt rabbit.
Defendant was in the area of Emma Fox's apartment, he claimed looking for his uncle, when he was stopped by Deputy Kinney. Emma Fox had earlier filed a complaint against defendant for an incident which had occurred over the weekend, and which resulted in the issuance of an arrest warrant against defendant for aggravated kidnapping.
Defendant claimed Deputy Kinney stopped him twice. The second time Deputy Kinney stopped defendant, he told defendant to get the shotgun from the Datsun and hand it to him, through the open driver's window. Defendant claimed he resisted because Deputy Kinney told him to hand it barrel-first. Defendant claims he told Deputy Kinney the shotgun was loaded and he wanted to hand the shotgun to the deputy handle, or butt, first.
When the defendant would not hand the shotgun barrel-first through the patrol car window, defendant testified that Deputy Kinney threatened him, pulled his gun from its holster, and began to point it out of the driver's window at defendant. This is when defendant shot Deputy Kinney. Defendant denied he was the one who fired the second shot at the windshield.
Deputy Kinney was shot with # 4 buckshot, and the windshield to his patrol car was shot with # 6 squirrelshot. When defendant was searched pursuant to his arrest, both red and green 12 gauge shotgun shells were removed from his pockets.
Defendant's testimony that Deputy Kinney was pointing his gun at defendant while holding it in his right hand, out of the *633 open car window, was discredited by the testimony of the forensic pathologist, Dr. George McCormick, III. According to the testimony of Dr. McCormick, the path of the shotgun blast through Deputy Kinney's chest was from the left front of his chest across the right rear, which is inconsistent with the deputy turning his body to aim a gun held in either his right or left hand. Deputy Kinney's gun was found strapped in its holster and stuffed between the front seats of his vehicle. The deputy's pistol was covered with blood, glass, and body tissue. Dr. McCormick testified that the shotgun blast went through the deputy's left lung, heart, and then right lung, and caused massive internal bleeding. Since the deputy died within minutes after the shooting, he opined that it was improbable that Deputy Kinney could have reholstered his gun and stuffed it between the seats before he slipped into unconsciousness, and then died.
After the shooting, defendant told Mrs. Bonds that he shot Deputy Kinney. At trial, defendant admitted he aimed the shotgun in Deputy Kinney's direction, and fired the shotgun, but he would not admit he shot Deputy Kinney.
After defendant was transported to the Sabine Parish Sheriff's Office, he was interrogated by several deputies. In a motion to suppress, defendant alleged he was beaten during this interrogation, and continually subjected to threats and intimidation until he testified four days later before the grand jury. At the hearing on the motion to suppress statements made by him during this interrogation, as well as his later testimony before the grand jury, the district attorney advised the trial court that he would not use defendant's initial statements made during interrogation because the case against defendant was so strong, that he did not need it. Because of the district attorney's decision not to use the statements made by defendant during interrogation, it was unnecessary for the trial court to suppress them. Nevertheless, in denying defendant's motion to suppress the grand jury testimony, the trial court, in dicta, stated that based upon the evidence presented, it would have suppressed the initial statements as a result of police misconduct at the time of the initial interrogation.
In a pre-trial motion which was unopposed by the State, venue for defendant's trial was initially changed to the Eighth Judicial District Court in Winn Parish. Shortly before trial, defendant requested a return of venue to Sabine Parish. After a contradictory hearing, defendant's trial was returned to Sabine Parish.

ASSIGNMENT OF ERROR ONE
By his first assignment of error, defendant contends the trial court erred in denying his motion to recuse the district attorney. Defendant based his motion upon several grounds: the district attorney's personal friendship with the victim; the possibility the district attorney may have to testify concerning the beating of defendant; and the change of venue from the Eleventh Judicial District to the Eighth Judicial District which deprived the district attorney of authority to prosecute the case.
From the outset, we find that the issue of the effect of the change of venue to the Eighth Judicial District Court was rendered moot when venue was returned to the Eleventh Judicial District Court after defendant personally requested return of venue to Sabine Parish. The trial court conducted a colloquy with defendant to ensure his request to return venue to the Eleventh Judicial District was knowing and voluntary. Therefore, we will not address this aspect of defendant's argument.
When a defendant files a motion to recuse the district attorney pursuant to LSA-C.Cr.P. Art. 680(1), he bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest which conflicts with the fair and impartial administration of his duties. State v. Edwards, 420 So.2d 663, 673 (La.1982), citing, State v. Marcal, 388 So.2d 656 (La.1980).
Concerning the issue of the personal friendship of the district attorney and the victim, the evidence presented by defendant *634 at the hearing on this motion did not establish by a preponderance of the evidence that Deputy Kinney and the district attorney were close personal friends. When questioned about the extent of his friendship with Deputy Kinney, the district attorney testified that he did not socialize with the victim, except at functions such as the Sheriff's Christmas party. His contacts with Deputy Kinney were generally professional.
In denying the motion to recuse, the trial court further noted that nothing presented by defendant established that the district attorney was being overzealous in the prosecution of this case as a result of his relationship with the victim.
On the issue of the district attorney having to recuse himself because he would testify concerning the alleged beating of defendant by sheriff's deputies, although the trial court did not address this issue specifically, the evidence established that the district attorney was not a witness to any beatings or interrogations. The district attorney was questioned about his knowledge of the beating and he testified that he had heard rumors about defendant being beaten by deputies, but these were simply rumors. He also informed the trial court that Officer David Remedies of the Zwolle Police Department had initially told him that defendant was roughed-up by some of the deputies. However, Officer Remedies later changed his account of what had happened and described the incident as a "scuffle" resulting from defendant slinging a cup of coffee. Accordingly, we find that the district attorney's testimony was only about rumors and hearsay, and did not concern any issue of defendant's guilt or innocence. Therefore, we find that the trial court was correct in not granting the motion to recuse the district attorney on this ground.
Considering the several arguments presented, this assignment of error is without merit.

ASSIGNMENT OF ERROR TWO
This assignment of error was not briefed by defendant, and will not be considered since it is deemed abandoned. Uniform Rules of Courts of Appeal, Rule 2-12.4

ASSIGNMENT OF ERROR THREE
By this assignment of error, defendant claims the trial court erred in not requiring the State to provide certain exculpatory or favorable evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In particular, defendant refers to the statement by Officer David Remedies to the district attorney and an assistant district attorney that defendant was struck twice in the face by one or two deputies after his arrest on Monday, February 20, 1989. Defendant contends this information is important because Officer Remedies' testimony at the hearing on the motion to suppress was inconsistent with his prior statements and would have been beneficial to defendant at the hearing and at trial. As noted by the Louisiana Supreme Court in State v. Roussel, 381 So.2d 796 (La.1980):
"The purpose of the Brady rule is to insure that defendants receive their constitutional right to a fair trial guaranteed by the due process clause, a trial in which the trier of fact has before it all available material exculpatory evidence. Id. at 799-800."
The Brady rule requires the disclosure of evidence favorable to the defendant if it is material to the issue of a defendant's guilt, that is, it would have changed the outcome of defendant's trial, and nondisclosure would deprive the defendant of a fair trial. See, e.g., State v. Johnson, 575 So.2d 417, 421 (La.App. 4th Cir.), writ denied, 578 So.2d 131 (La.1991).
In the present case, we find that any prior inconsistent statements made by Officer Remedies to the district attorney about possible beatings of defendant did not constitute exculpatory evidence. Defendant admitted at trial that he aimed the shotgun at Deputy Kinney, and fired it. Also, as will be discussed infra, the alleged beating of defendant did not result in suppression of defendant's grand jury testimony.
*635 Moreover, we find that the record shows that defendant is demanding disclosure of evidence of which he not only had knowledge, but used at the pretrial hearings. Cf. State v. James, 396 So.2d 1281 (La. 1981).
Therefore, this assignment of error is without merit.

ASSIGNMENTS OF ERROR FOUR AND FIVE
Our discussion of these assignments of error will be combined since both address the defendant's grand jury testimony. A hearing on defendant's motion to suppress his grand jury testimony was conducted, and the trial court issued lengthy written reasons for judgment which summarized the testimony presented, the law applicable, and conclusion reached.
The defendant claimed he was beaten and threatened by several deputies after he was transported to the Sabine Parish Jail. The deputies denied beating defendant, and claimed the only physical altercation which occurred during the interrogation was the restraint of defendant after he began waving his arms, causing a cup of coffee to spill. A photographer from a local newspaper saw defendant after the interrogation and described his nose as swollen and bleeding. She tried to take a photograph, but a deputy ordered her not to photograph defendant. After defendant's family saw him the next morning, they retained a private attorney, Mr. Andrew Vallien. Mr. Vallien met with defendant four days after his arrest for a half hour before defendant testified before the grand jury, and was present with defendant while he testified before the grand jury.
Even though the grand jury testimony was given on Friday, February 24, 1989, four days after the alleged beating on Monday, February 20, 1989, defendant claims he was forced to give the grand jury testimony through coercion, and out of fear for his safety. Defendant was read his constitutional rights by the district attorney before he testified before the grand jury, and his attorney informed all present that he could request a recess to confer with his client at any time during the proceedings.
It is important to note that the only variation between defendant's version of what happened at the time of the shooting which was given at the grand jury proceedings, and at trial, was that defendant later testified that Deputy Kinney pulled his gun and pointed it at defendant. Although defendant claims in his brief that the grand jury testimony was used at trial when defendant testified, our review of the record does not reveal this, and no citation to the record was given in defendant's brief.
The trial judge cited the law that the State must prove beyond a reasonable doubt that any confession or inculpatory statement was made freely and voluntarily before it can be used at trial. LSA-R.S. 15:451. If one statement is illegally obtained from a defendant and therefore inadmissible, then a subsequent statement obtained from the defendant may be admissible if it is made freely and voluntarily, and not the result of exploitation of the initial illegality. State v. Young, 344 So.2d 983 (La.1977).
The trial judge then stated that if the motion to suppress had targeted defendant's initial statements shortly after his arrest, then the motion would have been granted. However, the motion was directed at defendant's grand jury testimony, given several days later, and the trial judge ruled that defendant's decision to testify before the grand jury, after being advised of his rights and having the assistance of counsel, was an act of defendant's free will and entirely independent of any taint created in defendant's initial interrogation.
A review of the record supports the trial judge's ruling. Not only had several days elapsed since the interrogation on Monday afternoon, but defendant's family had also retained a private attorney who met with defendant before defendant testified. The retained attorney was present with defendant before the grand jury, and stated he would request a recess to confer with his client, if necessary. Defendant was again informed of his rights and signed a waiver of rights form before he testified. Therefore, *636 there is no error in the trial judge's ruling denying the motion to suppress.
Defendant further argues that he was not permitted to freely testify at trial because he feared being impeached by his prior grand jury testimony, allegedly obtained under duress. The State contends that defendant's complaint is that the availability of the grand jury testimony deprived defendant of his right to lie.
The availability of the prior grand jury testimony of defendant did not limit or deprive defendant of the right to testify freely and truthfully. Defendant could have explained the reason for any differences between his testimony at trial, and before the grand jury. When a witness is impeached, this simply means the jury, as the trier of fact, was presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury was prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony.
Therefore, we find that the rulings of the trial judge allowing the State to use defendant's grand jury testimony at trial, and for impeachment are not erroneous. Defendant was not deprived of his right to testify freely and truthfully. Moreover, the testimony given before the grand jury was never used at trial by the State. Defendant did testify and was able to give a different version of what occurred at the shooting without the State attempting to impeach defendant by his prior grand jury testimony.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR SIX AND SEVEN
Defendant contends that the trial court erred in conducting voir dire in the presence of jurors already selected, and in allowing the attorneys to exercise peremptory challenges without a side bar conference. Our careful review of the record shows that defendant failed to object to either of these voir dire issues.
When a defendant fails to contemporaneously object in the trial court, he waives that error and cannot raise it on appeal. LSA-C.Cr.P. Art. 841; State v. Johnson, 452 So.2d 1302 (La.App. 3rd Cir.1984). Therefore defendant may not raise these issues on appeal.

ASSIGNMENTS OF ERROR EIGHT AND NINE
The defendant did not brief these assignments of error, and they will not be considered since they are deemed abandoned. Uniform Rules of Courts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR TEN
By this assignment of error, defendant alleges the trial court erred by admitting into evidence certain items for which the chain of evidence was not properly maintained. In particular, defendant complains that the shotgun used by defendant, the victim's pistol and holster, and the two spent shotgun shells recovered at the shooting scene and from defendant's automobile should have been excluded because the State failed to lay a proper foundation for their admission into evidence.
The law concerning the admission of physical evidence is well-settled:
"Admission of physical evidence requires that a foundation be laid, either by positive identification by a witness or through establishment of a chain of custody. A continuous chain of custody need not be established if evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized by police officers; moreover, any defect in the chain of custody goes to the weight of the evidence rather than to its admissibility." (Citations omitted.) State v. Wilson, 495 So.2d 415, 417 (La.App. 3 Cir.1986), citing State v. Guillory, 438 So.2d 1256 (La.App. 3 Cir.1983).
*637 Trooper Joe Melton of the Louisiana State Police testified he recovered the spent shotgun shells: one from the scene of the shooting, and one from the inside of defendant's Datsun 280Z which had been towed to the sheriff's office. Trooper Melton turned this evidence over to Deputy Joe Byles, who was in charge of the evidence. In between the shooting on February 20, 1989, and the time of defendant's trial, approximately one year later, Deputy Byles suffered a massive stroke and was unable to testify at defendant's trial. Accordingly, the chain of custody could not be established through Deputy Byle's testimony. Therefore, the State had to rely upon the identification of the evidence by the witnesses.
The shotgun was recovered at the Bonds' residence by Officer Wayman Ferguson and Trooper Melton; the victim's pistol and holster were recovered from his patrol car by Deputy McComic. As with the spent shotgun shells, all items of evidence were turned over to Deputy Byles who locked them in the evidence room.
The police officers who recovered the evidence identified the particular items as looking like the items they seized, but because they had neither marked the evidence nor made notes of serial numbers, they candidly admitted they could not swear that the items exhibited in court were the identical items seized at the time of the shooting. However, when defendant objected to admitting the evidence, the trial court noted that the State had proved that these items were more probable than not the same items seized after the shooting. Once admitted into evidence, it was up to the jury to decide whether to give any weight to the evidence.
We find that the ruling of the trial court was correct. Any problems with the admission of the shotgun were remedied when defendant identified the shotgun admitted into evidence as the shotgun he used to shoot Deputy Kinney. Although Deputy McComic later returned Deputy Kinney's pistol and holster to their owner, the evidence was identified by Deputy McComic as being the same pistol and holster he recovered from the deputy's patrol car. Also, Trooper Melton identified the two spent shotgun shells as appearing exactly like the shells he recovered after the shooting.
Defendant contends the callous disregard for the chain of custody offended defendant's right to due process. We disagree. Defendant was able to place before the jury the issue of identification, and the lack of a proper chain of custody, by exploring the inadequacies in the preservation of the physical evidence. Defendant failed to establish any tampering with or alteration of the evidence. Although the procedure used to collect and preserve the evidence was not perfect, it was not so lacking as to deny the defendant due process of law. Cf. State v. Wilson, supra.
Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR ELEVEN
This assignment of error also concerns the chain of custody of the shotgun and spent shotgun shells. Defendant has gone into more detail about the particular prejudice suffered as a result of admission of the shotgun shells. Defendant claims that even though he later identified the shotgun recovered by Trooper Melton as the shotgun he used to shoot Deputy Kinney, the failure of the State to establish the chain of custody during its case-in-chief should have prevented the admission of the shotgun. In particular, the firearm expert should not have been permitted to testify about his testing of the shotgun, comparison of the spent shells with shells he fired from the shotgun, and his conclusion that the shotgun retrieved by Trooper Melton fired the shot that killed Deputy Kinney. As stated previously, any defect in the chain of custody, or identification, goes to the weight of the evidence rather than its admissibility. Wilson, supra.
This assignment of error is without merit.

ASSIGNMENT OF ERROR TWELVE
This assignment of error was not briefed by defendant, and will not be considered *638 since it is deemed abandoned. Uniform Rules of Courts of Appeal, Rule 2-12.4

ASSIGNMENT OF ERROR THIRTEEN
This assignment of error concerns the closing argument of the State. During closing arguments, the State compared the theory of defense presented by defendant to a "Saddam Hussein defense." At the time of defendant's trial, the United States and other countries were involved in a war with Saddam Hussein, the leader of Iraq. Defendant contends that this characterization of the defense was an improper plea to prejudices. Although defendant objected to the State's characterization of his defense, the record does not reflect that the trial court ruled on the objection or admonished the jury.
Although great latitude is allowed in closing arguments, LSA-C.Cr.P. Art. 774 specifically states: "... The argument shall not appeal to prejudice ...".
The State contends that the remark pointed out the total lack of evidence in support of the defendant's position, and was not designed to appeal to the prejudice of jurors. We find that if the State had wanted to point out the lack of evidence in support of defendant's case, it could have chosen to make this comparison or characterization without using a remark as inflammatory or prejudicial as the "Saddam Hussein defense." Even though the remark made by the State should be considered one prohibited by LSA-C.Cr.P. Art. 774, and the trial court erred in not admonishing the jury to disregard it, we must still determine whether the error is harmless or reversible.
A jury verdict of guilty will not be reversed due to an improper closing argument unless it can be shown that the prejudicial remark so inflamed the jury that the remark influenced the jury and contributed to the verdict of guilty. State v. Williams, 447 So.2d 495, 500 (La.App. 3rd Cir.), writ denied, 450 So.2d 969 (La.1984). In the present case, the evidence against defendant was substantial. Deputy Kinney had radioed for a city policeman to meet him and defendant at a certain location minutes before his body was located inside of his patrol car. A witness had driven by defendant and Deputy Kinney while the deputy was talking on his radio and defendant was seen walking back to his Datsun 280Z. After defendant shot Deputy Kinney, he told Mrs. Bonds he shot Deputy Kinney and asked her to call the police and his family. Defendant admitted at trial to shooting at the victim with the shotgun. Moreover, the physical evidence and testimony of the forensic pathologist refute defendant's claim of self-defense or accident. In short, we find that the evidence against defendant was overwhelming. Accordingly, we conclude that the jury's verdict of guilty was not based upon the prejudicial remarks of the State in disregard of the evidence presented.
Therefore, we hold that the trial court's failure to sustain defendant's objection and admonish the jury and district attorney, constituted harmless error, and find that this assignment of error is without merit.

ASSIGNMENT OF ERROR FOURTEEN
By his final assignment of error, defendant contends the trial court erred in denying his motion for new trial. Defendant's motion for new trial raised the same issues presented in the assignments of errors, those briefed and not briefed on appeal, plus the issue of the sufficiency of the evidence and cumulative effect of the errors alleged. After a hearing on the motion for new trial, the trial judge gave oral reasons why he was denying the motion. Defendant timely objected.
We have addressed the issues raised in defendant's motion for new trial in the various assignments of error discussed hereinabove. The only other contention not treated yet is defendant's assertion under LSA-C.Cr.P. Art. 851(5) that the ends of justice would be served by the granting of a new trial.
When defendant's motion for a new trial is based on the ground of satisfying the demands of justice, denial of the motion presents nothing for appellate review. State v. King, 563 So.2d 449 (La. *639 App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). Accordingly, we find that this additional ground presents nothing for us to consider on this appeal.
Therefore this assignment of error is without merit.

DECREE
For the foregoing reasons, defendant's conviction is affirmed. Costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[*] Judge Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.